## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action |
| | ) | |
| v. | ) | No. 12-10219-01-MLB |
| | ) | |
| DINH NGUYEN, | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

### DEFENDANT'S MOTION FOR A SENTENCE OF PROBATION AND SENTENCING MEMORANDUM IN SUPPORT

### INTRODUCTION

The crime of conviction is relatively straight forward and simple. It results from a plea agreement in which Dinh Nguyen pleaded guilty to one count of tax evasion in violation of 26 USC § 7201. Although the Indictment contains two counts of violation of the statute for tax years 2005 and 2006, the plea only admits guilt to Count 2, i.e. tax year 2006.

However, the plea agreement, importantly, does not state an agreed amount of tax loss. The parties agreed that the Court would determine the amount of the tax loss due and owing at sentencing for purposes of guideline calculations under the advisory sentencing guidelines. *See* Plea Agreement, Doc. 24, p. 2.

As the Court knows well, the driving factor under the Sentencing Guidelines for a tax evasion conviction is the amount of loss. The Government's amount of loss is incorrect for several reasons: (1) the IRS did not know what specific expenses were for so it incorrectly

1

categorized them as personal expenses; (2) it disregards the S Corporation status of the entity of which Mr. Nguyen held an ownership interest; and (3) therefore, mis-categorized various distributions and losses which resulted in a grossly overstated tax due and owing. The correct amount of tax due and owing for 2005 and 2006 is $88,831.

Mr. Nguyen knows that he understated his income and, therefore, the amount of tax due and owing for the year 2006. He does not dispute the tax evasion conviction. However, it is Defendant's position that with the corrected amount of loss and when the Court considers the other 18 U.S.C. § 3553(a) factors, a sentence of probation would be the appropriate sentence.

## **THE LAW**

Although the Court must consider the sentencing guidelines, under *United States v. Booker* they are merely one sentencing factor and the calculated guideline range must be considered in conjunction with other § 3553(a) factors. *See United States v. Kristl*, 437 F.3d 1050 (10th Cir. 2006). The federal sentencing statute requires a "sentence sufficient, but not greater than necessary" to meet certain goals, including consideration of "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant . . . (3) the kinds of sentence available . . . (6) the need to avoid unwarranted sentence disparities among defendant with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." 18 U.S.C. §3553(a).

When these factors are considered, a sentence of probation is the appropriate sentence in this case.

I.     **Applying the Factors of 18 U.S.C. § 3553(a) to Dinh Nguyen**

   A. **The History and Characteristics of Mr. Nguyen**

      1. Education and Background

Dinh Nguyen was born the fifth son in his family in 1982 in Vietnam. Two years after he was born, the family made the voyage to America and settled in Dodge City, where other family members from war-torn Vietnam had immigrated previously. The Nguyens moved to Wichita before Dinh Nguyen started school so the children, eventually there would be seven boys and one girl, would have the opportunity to attend better schools.

The family lived frugally in a house where if you turned on the kitchen light too quickly the scurrying of cockroaches would greet you and in a neighborhood where violence was not far away. In fact, Mr. Nguyen's younger sister, who was 12-year-old at the time, was killed by stray gunfire as she slept in that house. Mr. Nguyen found her shot next to her bed. This tragedy brought an already close family even closer.

The family moved to the Wichita Northwest High School district shortly after Mr. Nguyen's sister was killed, and Mr. Nguyen began high school at Northwest in the fall of 1998. Mr. Nguyen's older brothers had graduated from Wichita West High School, with one of them attending Yale after graduation.

While in high school Mr. Nguyen sold car radios, first at Best Buy then at Circuit City where he was paid on commission. In 2001 he made $83,000 at Circuit City while still attending high school. Mr. Nguyen moved to Eddy's Toyota and sold cars part time while in school after Circuit City switched from commission to hourly,

Mr. Nguyen enrolled at Wichita State after graduating from Northwest in 2002 and worked throughout college, going straight from class to work and back home so he could study.

He graduated from Wichita State with a business degree in 2008 and an MBA from University of Phoenix in 2011. Notably, Mr. Nguyen received both degrees after 2006, the tax year to which he pleaded guilty to tax evasion.

In 2005 and 2006, the years at issue in the indictment, Mr. Nguyen was a 23 year-old college student attempting to run a business with more than $3 million in gross receipts.

### B. The Nature and Circumstances of the Offense

#### 1. BN Scooters

In 2003, Mr. Nguyen's younger brother, who was only 13 at the time, came up with the idea to sell scooters online. Mr. Nguyen helped him with the website, incorporated the business as BN Scooters and started selling scooters. Originally BN Scooters was only a website where suppliers drop-shipped the scooters. Eventually Mr. Nguyen partnered with his best friend Mark Shipley to open a small showroom to sell scooters which was operated as Scooter World.

A corporate dissolution was signed on December 31, 2005 dissolving BN Scooters. *See* Ex. 1. Thus, Mr. Nguyen intended to dissolve BN Scooters at the end of 2005. The Indictment alleges that Mr. Nguyen "disregarded the corporate entity in 2004 for tax purposes . . . The way the business was operated didn't change from 2004 to 2006." Indictment, Doc. 1, p. 5. In actuality, BN Scooters was not simply disregarded at the end of 2005 and in 2006, it was dissolved; and a new corporation was formed.

#### 2. National Direct Powersports

In October 2005, Mr. Nguyen and Mr. Shipley incorporated National Direct Powersports (hereafter "NDP") as an S corporation. The IRS accepted NDP's election on October 10, 2005. *See* Ex. 2. The indictment incorrectly states that the election to treat NDP as an S corporation was filed September 8, 2006, which is nearly a year after it actually was effective.

Mr. Nguyen decided to incorporate NDP as an S corporation merely because he thought that a business needed to be incorporated to be legitimate and picked S corporation based on an internet search.

Mr. Nguyen was in school at the time he and Mr. Shipley decided to incorporate NDP and did not have much time to devote the business. Conversely Mr. Shipley was not in school, worked full-time at NDP, and was interested in taking a larger leadership role. *See* Ex. 3, Shipley Statement, p. 2. Because Mr. Shipley was investing more time in the scooter business, he was delineated as 90 percent owner of NDP and Mr. Nguyen as 10 percent owner. *See* Ex. 3, Shipley Statement p. 2. Mr. Shipley was excited to take on a greater leadership role in the business. *See* Ex. 3, Shipley Statement, p. 2. And the Articles of Incorporation reflect that Mr. Shipley was the registered agent for NDP. *See* Ex. 4.

Neither Mr. Nguyen nor Mr. Shipley as recent high school graduates were knowledgeable nor sophisticated enough in tax and financial matters to fully understand the tax consequences of forming an S corporation or of their own ownership of the stock of NDP in a 90/10 ratio.

The partners intended for all business to be conducted under NDP. *See* Ex. 3, Shipley Statement, p. 2. They never intended for the online sales to be a business owned solely by Mr. Nguyen and the brick and mortar-store to be solely owned by Mr. Shipley. *See* id. Duties were split by skill sets. *See* Ex. 3, Shipley Statement, p. 5. Mr. Shipley was better at the back-end part of the business and Mr. Nguyen was better at dealing with customers and suppliers. *See* id. Mr. Nguyen ordered inventory for the website and for the show room. *See* id. Mr. Shipley ran the retail store, paid certain expenses and handled customer calls and complaints because he had the time to take care of those while Mr. Nguyen was still in school. *See* id.

In addition to incorporating as an S corporation, there were several changes in October, 2005 that indicate the business owners intended for a new corporation to be formed. An employer identification number was obtained. *See* Ex. 5, McDaniel Report, p. 6. A new, larger retail showroom was rented and opened in October 2005. *Id.* A new check numbering sequence was started when the existing bank account was changed to the NDP name. *Id.* The NDP name was used as the name on checks written starting at that time. *Id.* A credit card was obtained in the NDP name. *Id.* A significant infusion of capital was made to NDP in late 2005. *Id.* 1120S forms were filed for NDP for 2005 and 2006, which were not filed in 2004 before it was incorporated. *Id.*

All of the above demonstrate that Mr. Nguyen and Mr. Shipley intended to operate NDP as a corporation and differently from how it previously was operated.

In fact, when one looks at how the individual taxes were filed in comparison with the corporate returns, it fits with the 90/10 ownership split. Mr. Nguyen filed with an income of 10 percent of the corporate income, and Mr. Shipley filed an individual return in which he claimed 90 percent of the corporate income. *See* Ex. 7A, 2006 Form 1120s for NDP; Ex. 7B, Mr. Nguyen's 2006 1040; and Ex. 7C, Mr. Shipley's 2006 1040.

Some business names continued to be used after the corporation was formed, but this alone does not indicate that Mr. Nguyen disregarded the corporation as the indictment alleges. Rather it relates to the fact that an internet presence already existed under other names. If they had suddenly started using only NDP starting in October 2005, they would have lost the marketing value of names previously used (such as BN Scooters and Scooter World). Therefore, they continued to do business using those names after they switched to the corporate form of business in October 2005.

### 3. Hurricane Katrina

On August 29, 2005 Hurricane Katrina struck the Gulf Coast. Most of the damage caused by Katrina didn't strike until later. The price of gas soared by as much as 40 cents a gallon from Tuesday to Wednesday during the week following the Hurricane[1]. The surge was blamed on disruptions by Hurricane Katrina in Gulf of Mexico oil production.[2]

Even before Hurricane Katrina hit, scooter sales were on the increase. Retail Sales in the U.S. went from 12,000 scooters in 1997 to 113,000 in 2005 according to the Motorcycle Industry Council.[3] The rise in gas prices following Hurricane Katrina sent scooter sales even higher and attracted a new kind of scooter buyer.[4]

The exploding market made it hard for NDP to keep up with the demand. This was compounded by problems created by a poor quality product. The scooters were shipped poorly by the supplier and were often damaged upon delivery. The customer would then ship the scooter back to the supplier, which would charge NDP $300 for the shipping and another $300 for the return shipping. This resulted in a lost profit on the scooter. NDP also suffered from poor accounting. Money was taken from whichever account it was available, whether it was a personal or business account. After all, this was a business run by two 23-year-olds without college degrees.

### 4. Cash Loans From Family Members

The sharp increase in demand caused by Hurricane Katrina also required a sharp increase in the purchase of inventory. To meet the demand, Mr. Nguyen accepted cash loans from his

---

[1] Jad Mouwad and Simon Romero, *Gas Prices Surge as Supply Drops,* N.Y. Times, Sept. 1, 2005, available at http://www.nytimes.com/2005/09/01/business/01oil.html?pagewanted=all&_r=0 (last visited Apr. 22, 2014), Attached as Attachment 1.
[2] *See* id.
[3] *See High Gas Prices Lead to Boom in Motor Scooters,* NBC News, May 15, 2006 http://www.nbcnews.com/id/12753332/ns/business-autos/t/high-gas-prices-lead-boom-motor-scooters/#.UhvNctKsiSo, Attached as Attachment 2
[4] Id.

family members. In fact, bank account records reflect an infusion of cash at the end of 2005. *See* Ex. 5, McDaniel Report, p. 6.

As sales picked up, Mr. Nguyen paid back the loans and those are reflected in the large withdrawals of money. A review of the bank account records provided by the government reflects that a total of $166,000.00 in personal loan repayments were made in 2006. *See* Ex. 5, McDaniel Report, p. 8. These cash expenditures incorrectly were treated as personal expenditures by the IRS. *See* Ex. 5, McDaniel Report, p. 3.

In the Asian culture it is common to deal in cash more frequently and for family members to loan one another cash. As Mr. Nguyen's sister-in-law Trinh Nguyen told the IRS, "It is common for people in the Asian community to 'swap' money" with no documents prepared. Doc. 27, Presentence Investigation Report, p. 9, ¶ 35.

NDP bought a large portion of inventory from Chinese distributors in California which would give NDP a discount if it paid in cash. Ex. 3, Shipley Statement, p. 5. The bank account statements reflect cash withdrawals that were used to buy inventory and were incorrectly categorized as personal expenses by the IRS. *See* Ex. 5, McDaniel Report, pp. 3, 11.

The above recitation of facts is necessary to understand how the business was operated and how the taxes should have been figured – by Mr. Nguyen, by Mr. Shipley, and by the government, all of whom incorrectly figured the taxes owed.

### 5. The Correct Amount of Tax Loss Due and Owing

The determinative factor in sentencing under a 26 USC §7201 conviction is the amount of tax loss. The USSG defines "tax loss" for the purpose of sentencing defendants convicted under § 7201:

> If the offense involved tax evasion or a fraudulent or false return, statement, or other document, the tax loss is the total amount of loss that was the object of the

> offense (i.e., the loss that would have resulted had the offense been successfully completed).

USSG § 2T1.1(c)(1). The notes to § 2T1.1 instruct courts that tax loss "shall be treated as equal to 28% of the unreported gross income . . . *unless a more accurate determination of the tax loss can be made.*" *Id.* § 2T1.1(c)(1), Note (A) (emphasis added). "[A]lthough the government bears the burden at sentencing of proving the amount of tax loss flowing from the defendant's illegal acts, neither the government nor the court has an obligation to calculate the tax loss with certainty or precision." *United States v. Sullivan*, 255 F.3d 1256, 1263 (10th Cir. 2001) (quotation omitted). That is to say the Guidelines establish a simple-to-calculate presumptive tax loss linked to gross income and a set tax rate; this presumptive amount will be applied unless a more accurate determination can be made by the court. *United States v. Hoskins*, 654 F.3d 1086, 1092 (10th Cir. 2011).

A much more accurate determination of tax loss can be made than the amount of tax loss due and owing alleged by the government in the indictment and the PSR. Mr. Nguyen retained Dale McDaniel as an expert to do a correct analysis of his expenses and taxes.

Mr. McDaniel has more than 35 years of experience in matters relating to financial auditing and investigations. *See* Ex. 6, McDaniel CV. Mr. McDaniel has extensive experience with Federal tax law, including 25 years with the Internal Revenue Service, Criminal Investigation Division as a supervisory special agent and assistant special agent-in-charge. *Id.* During his work in the Criminal Investigation Division, Mr. McDaniel was assigned to various high-profile investigations, including the Watergate Special Prosecutor in Washington, D.C., and as a result of this assignment, conducted investigations regarding illegal political contributions by multi-national corporations. *Id.* Mr. McDaniel was also the Criminal Investigation Division's team leader on a major investigation conducted jointly with the Federal Bureau of Investigation

9

relative to political corruption (kickbacks, bribery, etc.) involving county commissioners in Oklahoma. *Id.*

Using the discovery provided by the government, extensive interviews with Mr. Nguyen and interviews with Mr. Shipley, Mr. McDaniel performed his own analysis of the tax years at issue. He found Mr. Nguyen owed $88,831 in income taxes for the tax years 2005 and 2006, compared to the $459,284 the government alleges Mr. Nguyen owed for those years. *See* Ex. 5, McDaniel Report at p. 4.

In calculating the taxable income, the IRS used the bank deposits and cash expenditures method of proof (hereafter "bank deposits method"). The bank deposits method is a perfectly acceptable indirect method of proof to reconstruct income where, as here, records were not adequately kept. *See United States v. Ramsdell*, 450 F.2d 130 (10th Cir. 1971). However, there are several errors in how the IRS calculated Mr. Nguyen's corrected taxable income. Mr. McDaniel's report provides a thorough and extensive review of Mr. Nguyen's finances for the years in question and an accurate amount of tax loss for which Mr. Nguyen is liable. Mr. McDaniel's report is incorporated by reference herein.

The report details the errors the IRS made in calculating the amount of tax loss.

> i. *The Methods Used by the IRS in Classifying Expenditures as Business or Personal Are Not Reliable.*

First, the IRS primarily relied on Mr. Shipley's classifications of the expenses. The government duplicitously relies on Mr. Shipley's classifications while positing that Mr. Shipley did not know anything how much the "online portion," i.e., Mr. Nguyen's portion, made so he could not report its income. *See* Doc. 1, Indictment, p. 5. Either Mr. Shipley knew enough as Mr. Nguyen's business partner to classify the expenses and should be liable for his portion of the

corporation's income; or he did not know how the online portion worked, and, thus could not classify the expenses.

Because of this unreliable source, certain business expenses were improperly classified as personal expenditures, resulting in an understatement of business expenses and an overstatement of taxable income.

### ii.     *Cash was not properly classified*

Second, the IRS inaccurately classified cash deposits and withdrawals, which affected the amount of income.

The personal loans that were received by Mr. Nguyen in cash in 2005 and described *supra* were not identified by the IRS, and therefore such loans were not incorporated in the computation of his non-income receipts. This resulted in his gross receipts and taxable income being significantly overstated. *See* Ex. 5, McDaniel Report, p. 8.

Cash expenditures representing legitimate business expenses were not identified by the IRS, resulting in an understatement in business expenses allowed in the IRS computation. This also resulted in an overstatement of his taxable income. *See* id.

### iii.     *No Separation of Online and In-Store Sales*

The government alleges in the indictment that Mr. Nguyen was responsible for the online sales and Mr. Shipley for the in-store sales, and this how it figured the purported income for Mr. Nguyen. *See* Doc. 1, Indictment, p. 4. Yet the pair never intended for NDP to be separated this way.

Mr. Shipley said he never intended for the corporate returns he filed for 2005 and 2006 to be reflective of "in-store" sales. Mr. Shipley intended for those returns to include income from all operations of NDP for those years. *See* Ex. 3, Shipley Statement, p. 4. According to both Mr.

Shipley and Mr. Nguyen, NDP was to be the sole entity through which the pair conducted its scooter sales business, and they did not intend to separate in-store and online sales into two entities. *See* Ex. 3, Shipley Statement, p. 2; Ex. 5, McDaniel Report, p. 12.

Thus the corrected income should have been figured with the corporate structure taken into account.

### *iv.   Disregard of S corporation status*

The IRS incorrectly disregarded the corporate entity despite the numerous markings that the partners intended to incorporate NDP and run it as an S corporation in late 2005. This has a significant effect on the amount of income tax due and owing for 2006.

Mr. Nguyen and Mr. Shipley operated the business as a proprietorship before forming NDP as an S corporation in October 2005. The Government in the indictment, and the Probation Office in the PSR, ignored the corporation for the purpose of the tax computations because:

> the IRS calculated the unreported income and expenses from online scooter business on Schedules C for 2005 and 2006, because Nguyen disregarded the corporate entity in 2004 for tax purposes, reporting his income and expenses from the online scooter business on Schedule C. The way the business was operated didn't change from 2004 to 2006.

Indictment, p. 5. NDP did not exist in 2004, thus, it could not be disregarded. The way Mr. Nguyen reported his income in 2004 has no bearing on how he reported it in 2005 and 2006 when there was a new corporation.

It is evident a new corporation was formed because the way the business worked changed significantly after October 2005. *See* Ex. 5, McDaniel Report, p. 6. Thus, to correctly calculate Mr. Nguyen's income for 2005 and 2006, the existence of NDP has to be recognized and income attributable to that corporation has to be calculated separately from Mr. Nguyen's personal income.

As stated above, Mr. Nguyen was a 10 percent owner, and Mr. Shipley was a 90 percent owner in NDP. As an S corporation, NDP is not subject to tax on its own income rather its net income or loss passes through to its shareholders. *Penncro Assocs. v. Sprint Spectrum L.P.*, No. 04-2549, 2006 U.S. Dist. LEXIS 31086, at *61-62 (D. Kan. May 15, 2006) citing *Capital Video Corp. v. C.I.R.*, 311 F.3d 458, 466-467 (1st Cir. 2002).

When there is a corporation in a tax evasion case, such as there is here, what the deficiency is in income claimed on the tax return turns on §§ 301 and 316(a) of the Internal Revenue Code. *See Boulware v. United States*, 552 U.S. 421, 424 (2008).

> According to § 301(a), unless another provision of the Code requires otherwise, a 'distribution of property' that is 'made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in [ § 301(c)].' Under § 301(c), the portion of the distribution that is a 'dividend,' as defined by § 316(a), must be included in the recipient's gross income; and the portion that is not a dividend is, depending on the shareholder's basis for his stock, either a nontaxable return of capital or a gain on the sale or exchange of stock, ordinarily taxable to the shareholder as a capital gain. Finally, § 316(a) defines 'dividend' as
> 'any distribution of property made by a corporation to its shareholders--
> '(1) out of its earnings and profits accumulated after February 28, 1913, or
> '(2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.'
>
> Sections 301 and 316(a) together thus make the existence of "earnings and profits" the decisive fact in determining the tax consequences of distributions from a corporation to a shareholder with respect to his stock. This requirement of "relating the tax status of corporate distributions to earnings and profits is responsive to a felt need for protecting returns of capital from tax." Bittker & Lokken P 92.1.1, at 92-3.

*Id.*, 552 U.S. at 424-425.

The Government overstated Mr. Nguyen's gross bank deposits because the deposits to the bank accounts that were used by NDP, that is the corporate entity in which Mr. Nguyen was an owner, were incorrectly treated as Mr. Nguyen's personal deposits. Additionally, the

13

distributions to Mr. Nguyen from NDP, an S corporation since October 2005, were not given the correct tax treatment, resulting in an overstatement of income in the IRS computation.

As §301 and §316(a) are written, the tax consequences of a "distribution by a corporation with respect to its stock" depend, not on anyone's purpose to return capital or to get it back, but on facts wholly independent of intent: whether the corporation had earnings and profits, and the amount of the taxpayer's basis for his stock. *See Boulware*, 552 U.S. at 431.

When the expenditures are correctly classified, as Mr. McDaniel did, there was a loss for 2005 attributable to Mr. Nguyen from the S corporation.

"There is no [tax] deficiency owing to a distribution (received with respect to a corporation's stock) if a corporation has no earnings and profits and the value distributed does not exceed the taxpayer-shareholder's basis for his stock." *Boulware*, 552 U.S. at 432-433. The IRS did not recognize Mr. Nguyen's net operating loss (NOL) for 2005 because of the errors described above. This resulted in the NOL not being carried forward to 2006 and caused 2006 income to be overstated.

The Government is not supposed to reap windfall gains as a result of tax evasion. *See United States v. Gordon*, 291 F.3d 181, 187 (2d Cir. 2002) ("Tax loss under § 2T1.1 is intended to reflect the revenue loss to the government from the defendant's behavior."); USSG § 2T1.1. For the purposes of calculating sentencing and restitution, courts consider "the loss that would have resulted had the offense been successfully completed." USSG § 2T1.1. *United States v. Hoskins*, 654 F.3d 1086, 1095, (10th Cir. 2011).

The correct amount of tax loss due and owing as figured by Mr. McDaniel is $88,831. Using this corrected amount of tax loss, the base level sentence should be 16. *See* USSG §2T4.1(F). That section provides that an offense involving tax loss of more than $80,000 but less

than $200,000 has a base level offense of **16.** Id. With a three-level reduction for acceptance of responsibility, (*see* Doc. 27, PSR, p. 10; USSG §§ 3E1.1(a) and (b)), Mr. Nguyen's total offense level would be 13. This offense level coupled with Mr. Nguyen's criminal history category of I, results in a sentence of 12-18 months under the Guidelines.

However, when the other factors under 18 U.S.C. § 3553(a) are considered, Defendant believes a sentence of probation is the appropriate sentence in this case.

C. **The need for the sentence imposed**

1. *To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense*

A sentence of probation that falls slightly below the suggested guideline range with the correct amount of loss will reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense.

Mr. Nguyen put future education plans, including a desire to attend law school, on hold while working to resolve this case in the manner most just to both the government and himself. By pleading guilty to tax evasion, Mr. Nguyen put a substantial hurdle in his own future endeavors. He recognizes the seriousness of the offense. He showed his respect for the law and his accountability by entering a guilty plea. The hurdles that Mr. Nguyen now faces in pursuing a legal degree, a real estate license, or any of multiple professional licenses by pleading guilty to tax evasion are just punishment for the offense at hand.

2. *To Afford Adequate Deterrence to Criminal Conduct.*

Almost 13 years ago, the guideline ranges for defendants convicted of serious fraud and related white-collar crimes were substantially increased. Since then the media has reported on lengthy sentences received by a number of high-profile white-collar defendants. *See e.g., Arthur Andersen LLP v. United States,* 544 U.S. 696 (2005); *United States v. Bernie L. Madoff,* No. 09-

15

213 (D.C. 2009). The public in general has become aware of the substantial risk of imprisonment for lengthy periods if they commit crimes of this nature.

In cases where a corporate officer a corporate officer enriches himself at the expense of the corporation or here his conduct resulted in the demise of the corporation, all while denying the Government the tax income it is due, a lengthy sentence of the magnitude contemplated under the guidelines might be necessary to provide general deterrence. *See Madoff supra.* However, in this case when Mr. Nguyen's conduct is compared to others, a lengthy sentence is not necessary for that purpose.

3. *To Protect the Public from Further Crimes by Mr. Nguyen*

A guideline sentence of 12-18 months imprisonment, or 30-37 using the government's amount of loss, is wholly unnecessary to protect the public from future crimes. As stated above, Mr. Nguyen has learned from this experience and is not a threat to the public to repeat his behavior.

4. *To Provide Mr. Nguyen with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner*

Mr. Nguyen is not in need of any particular educational or vocational training. Since the years at issue, he has received his college degree and his MBA. Mr. Nguyen has continued to work while released on bond pending resolution of this case.

Furthermore, Mr. Nguyen is not in need of any medical care or drug treatment. Any sentence the Court considers should take into account the fact that Mr. Nguyen will not qualify for the Residential Drug Abuses Program because he has never abused drugs or alcohol. As such, Mr. Nguyen is not eligible for any reduction in his sentence. In essence, he is facing a greater punishment than a person in the exact same circumstances who uses illegal drugs. Such a result is untenable.

16

5. *The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct.*

There are numerous examples in the United States Court for the District of Kansas in which defendants charged with tax crimes have received probation. In *United States v. Pflum*, 556 F. Supp. 2d 154 (D. Kan. 2008), Judge Crow sentenced the defendant to three-years of probation when the sentencing guideline range was a sentence of 12-18 months, just as it is here. In *United States v. Roberts,* 12-40093-JAR, the defendant underpaid his income taxes by $153,510 and was sentenced to a term of two years of probation by Judge Robinson. In *United States v. Lessard¸* 11-40020-JTM, one defendant was sentenced to probation and the other to community confinement when the tax due and owing was in excess of $800,000.

6. *The Need to Provide Restitution to the Victims*

Mr. Nguyen will best be able to pay restitution to the IRS if he is placed on probation and allowed to work. Mr. Nguyen is a talented salesman, if he is placed on probation he has the earning ability to pay off his restitution. Conversely, the Government would see minimal payments if he were sentenced to a term of imprisonment.

## CONCLUSION

The appropriate sentence in this case is a sentence of probation for several reasons, including the fact that Mr. Nguyen was a 23-year-old without a college degree when the crime was committed, the government's amount of loss is incorrect and substantially over inflated, Mr. Nguyen has been punished sufficiently by having to forgo his future plans, and he best will be able to pay restitution if he is gainfully employed and not imprisoned.

Respectfully submitted this 24th day of April, 2014.

**THOMPSON LAW FIRM, LLC**

        106 E. 2nd Street
        Wichita, Kansas  67202
        Telephone:    (316) 267-3933
        Fax:            (316) 267-3901
        E-mail:lthompson@tslawfirm.com


        __s/ Erin Thompson_____
        Erin Thompson (#22117)
        Lee Thompson (#08361)


## CERTIFICATE OF SERVICE

      I hereby certify that on the 24th day of April, 2014, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the appropriate parties.

        __s/ Erin Thompson_____